**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Dwight BLACKMON, Defendant–Appellant.**

**No. 98CA1756.**

Colorado Court of Appeals, Div. II.

July 20, 2000.

As Modified on Denial of Rehearing Oct. 19, 2000.

Certiorari Denied April 9, 2001.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine Cates Brady, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Dwight Blackmon, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance. We affirm the conviction and remand for re-sentencing.

According to the testimony of two police officers, while they were on patrol watching for people engaged in illegal drug activity, they saw defendant drop an object from his coat pocket. The two officers approached defendant, and while one spoke to him the other searched for, and found, the dropped object, discovering that it was a broken glass "crack pipe." That officer told the other to arrest defendant.

The arresting officer then conducted a search of defendant's coat pockets, discovered a piece of crack cocaine, and placed it on the trunk of the police car. According to the officers, defendant then attempted to put the cocaine in his mouth. After a struggle, the officers handcuffed defendant, and on further search of defendant, they discovered a film canister with more pieces of crack cocaine inside. These events resulted in the conviction at issue here.

### I. Suppression

Defendant contends the trial court abused its discretion in refusing to suppress the evidence recovered as a result of the officers' search. We disagree.

■ Review of a motion to suppress is a mixed question of fact of law. The trial court's findings of fact are subject to a clearly erroneous standard of review, while its legal conclusions are subject to *de novo* review. *People v. Romero*, 953 P.2d 550 (Colo. 1998).

■ When reviewing a trial court's suppression ruling, an appellate court must determine whether the trial court's factual findings are adequately supported by competent evidence in the record. If so, the court will not disturb them. The reviewing court must also determine whether the trial court applied the appropriate legal standard to the facts. *People v. Trujillo*, 784 P.2d 788 (Colo. 1990).

■ A trial court must suppress evidence obtained as the result of an unreasonable seizure. *See People v. O'Hearn*, 931 P.2d 1168 (Colo.1997). Warrantless searches and seizures are *per se* unreasonable unless justified by an established exception to the warrant clause of the Fourth Amendment. *People v. Salazar*, 964 P.2d 502 (Colo.1998). One such exception is for searches incidental to lawful arrests. *See People v. Bland*, 884 P.2d 312 (Colo.1994).

■ Arrests fall into two categories—custodial and non-custodial. A custodial arrest is "made for the purpose of taking a person to the stationhouse for booking procedures and filing ... criminal charges." *People v. Bland, supra*, 884 P.2d at 316.

■ A non-custodial arrest is "a temporary detention of a suspect pending the issuance of a summons for a minor ... ordinance violation." *People v. Bland, supra*, 884 P.2d at 319.

■ During a non-custodial arrest, an officer may conduct a pat-down search for weapons as well as a "search for instrumentalities or evidence of the specific crime for which the officer had probable cause to arrest." *People v. Bland, supra*, 884 P.2d at 320.

■ A search incident to a non-custodial arrest may be equal in scope to a full search incident to a custodial arrest. However, officers may not subject the person searched to a custodial arrest unless during the search incident to the non-custodial arrest they discover further evidence justifying a custodial arrest. *People v. Bland, supra*.

■ A full search incident to a custodial arrest is not limited to a pat-down of the suspect's outer clothing, but may extend to pockets or containers found on the suspect's person or within his or her immediate reach. *People v. Bischofberger*, 724 P.2d 660 (Colo. 1986).

In support of his argument, defendant relies on *People v. Bland, supra*, and *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). We conclude that *Bland* supports the trial court's ruling, and that *Knowles* is distinguishable.

Citing *People v. Bland, supra,* defendant urges that because his arrest was not a custodial arrest and because the officers had already obtained the broken crack pipe, they were not entitled to conduct a further search for evidence of drug paraphernalia. We disagree.

In *Bland,* the defendant was arrested for possession of less than one ounce of marijuana. Pursuant to the applicable statute, the officer was required to issue the defendant a summons to appear in court, but could not subject him to a full custodial arrest. Incident to the defendant's arrest, the officer conducted a full search of defendant's person and discovered a bag of cocaine taped to his leg.

The trial court suppressed the cocaine evidence, but on appeal, the supreme court reversed the trial court's suppression of the cocaine evidence. In so doing, the court stated that, in circumstances involving a non-custodial arrest for possession of marijuana, an officer may conduct a search of the defendant for weapons or for further evidence of marijuana possession. The court recognized that the scope of a search for marijuana possession is coextensive with a full custodial search and, thus, may include a suspect's clothing. *People v. Bland, supra.*

The *Bland* court distinguished a search incident to a non-custodial arrest for a traffic violation from a search incident to a non-custodial arrest for drug possession. It stated that, in the case of a traffic violation, at most, only a pat-down search is warranted because, in contrast to a drug offense, a full search will not reveal further evidence of the offense charged.

Here, defendant relies on language in *Bland* concerning traffic stops. He argues that once the officers recovered the crack pipe, a further search of defendant would not have revealed more evidence of the offense. This is so because, unlike in drug possession cases, the penalty for possession of drug paraphernalia does not increase if defendant is in possession of more than one item of drug paraphernalia. We are not persuaded.

The crack pipe recovered by the officers was not on defendant's person, but the officers observed him drop it from his coat pocket. Thus, in order to prevent defendant from asserting that the pipe was not his, the officers were justified in searching defendant's person for other drug paraphernalia. It was not unreasonable for the officers to believe defendant would have more than one pipe in his possession. Moreover, even though the penalty may not be enhanced based on the number of items of drug paraphernalia in defendant's possession, the officers were entitled to search for additional evidence of drug paraphernalia because such additional evidence would be relevant.

Similarly, *Knowles* is distinguishable. There, an officer who stopped the defendant for speeding ultimately discovered marijuana and related paraphernalia after a full search of defendant's vehicle.

On appeal of the Iowa courts' refusal to suppress the drug evidence, the United States Supreme Court reversed and held that, where a police officer stops an individual for a traffic violation and issues only a citation, the officer may not conduct a full search of the individual's person or vehicle. In its analysis the supreme court also focused on the fact that once a traffic citation is issued, there exists no need for a further search for evidence in support of that offense.

Here, the officer searched defendant after arresting him for possession of drug paraphernalia. According to one officer's testimony, the purpose of defendant's arrest was to issue him a citation for possession of drug paraphernalia, not to take him to the station house. Based on these circumstances, we conclude that the arrest constituted a lawful, non-custodial arrest. Consequently, the officers were entitled to conduct a pat-down search of defendant for weapons as well as a search of defendant's pockets for further evidence of drug paraphernalia.

Thus, the trial court did not abuse its discretion when it refused to suppress the evidence of crack cocaine obtained as a result of the officers' lawful searches.

## II. Due Process

■ Defendant next contends the trial court violated his constitutional due process rights by refusing to allow defense counsel broad discovery concerning the past conduct of one of the arresting officers and refusing to review the information *in camera*. We are not persuaded.

When appropriate, a trial court in a civil case may conduct an *in camera* examination of police files and reports to determine their relevance within the meaning of C.R.C.P. 26(b)(1). Non-privileged information "generally bearing on" a pending cause of action is subject to at least *in camera* review, and may be discoverable under the rule. *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980).

This principle was extended to criminal cases in *People v. Walker*, 666 P.2d 113 (Colo.1983), where the supreme court held that a defendant charged with assaulting a police officer is entitled to disclosure of complaints charging excessive use of force against the officer involved. *See* Crim. P. 16(III)(f)(upon request the court may permit an *in camera* showing of cause for denial of disclosure); Crim. P. 16(I)(a)(2) (prosecutor must disclose evidence that tends to negate defendant's guilt).

■ However, a trial court is not required to conduct an *in camera* review of police files and reports if the defendant fails to show how the information requested is relevant to the case at issue. *See generally United States v. Flagg*, 919 F.2d 499 (8th Cir.1990) (affirming trial court's denial of request for *in camera* review of police department file because defendant, *inter alia*, did not show that the alleged evidence in the file was critical to a finding of probable cause); *United States ex rel. Drain v. Washington*, 52 F.Supp.2d 856 (N.D.Ill.1999) (affirming the trial court's decision not to hold *in camera* review of police records because defendant could not show how the records were specifically relevant to his case).

Here, defendant served the police department with a subpoena duces tecum broadly requesting all documents within three years prior to the request bearing on truthfulness and complaints of use of excessive force in relation to one of the arresting officers. The subpoena essentially requested any documents that reflected on the officer's credibility. The trial court quashed the subpoena and concluded that, because defendant had not shown how the documents requested would assist his defense, he failed to meet the preliminary threshold for an *in camera* review.

Based on our review of the record, we agree with the trial court. Defendant did not allege that the officer used excessive force against him during the arrest in question, and did not allege that any previous contacts the officer had with him motivated the officer to arrest him on the night in question. Other than bare allegations that the requested documents would relate to the officer's credibility, defendant did not show how they would be relevant to his defense of the charges against him.

To require *in camera* review in these circumstances would mean that in virtually every criminal case, a defendant could obtain *in camera* review of all documents concerning the prior conduct of arresting officers. Such reviews would be unnecessarily burdensome to the courts and the police. Thus, we conclude that the trial court did not abuse its discretion when it quashed the subpoena and refused to grant defendant's request for an *in camera* review of the officer's records.

## III. Mistrial

■ Defendant asserts the trial court abused its discretion by refusing to order a mistrial after the prosecutor allegedly elicited improper testimony from one of the officers. We disagree.

■ Mistrial is a drastic remedy and is warranted only where the prejudice to the defendant is so substantial that its effect on the jury cannot be remedied by any other means. *People v. Burke*, 937 P.2d 886 (Colo. App.1996). The determination whether to declare a mistrial is committed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent an abuse of that discretion and prejudice to the

defendant. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984).

■■ To prevail on a claim that a jury was tainted by a courtroom occurrence, a defendant must show that the jurors' exposure to extraneous information or influences prejudiced the outcome. *People v. Harrison,* 746 P.2d 66 (Colo.App.1987). The mere possibility of prejudice is not sufficient to warrant reversal. *People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977).

Here, the trial court told the prosecutor to instruct the officers not to mention contacts with defendant that had occurred prior to the incident in question. The trial court also cautioned defendant's attorney that, if her questioning of the officer opened the door to such evidence, it would be admissible. On cross-examination, defendant's attorney asked one officer if he was aware at the time of the arrest that defendant walked with a limp and had limited use of the right side of his body. The officer answered, "Yes." On re-direct examination, the prosecutor asked the officer if he knew of defendant's disability before the night in question.

Defendant then moved for a mistrial, alleging that the officer's testimony was improper character evidence that prejudiced him because it implied that defendant had had prior contacts with the police in connection with criminal activity. The trial court concluded that, although the prosecutor should have requested a ruling before asking the question, the question was not improper because it attempted to clarify the question asked by defendant's attorney.

Based on our review of the record, we agree with the trial court. The prosecutor's question did serve to clarify the issue raised by the defense inquiry, and the officer's response did not indicate that any prior contacts with defendant had occurred in connection with criminal activities.

IV. Sentence Outside Presumptive Range

■ Defendant next asserts the trial court erred by imposing a sentence outside the presumptive range without making express findings. We agree and remand for re-sentencing.

■ When a sentence outside the presumptive range is imposed, the court must make findings on the record as to aggravating circumstances that justify variation from the presumptive range. Further, there must be sufficient facts in the record to support the trial court's findings. A trial court's sentencing decision will not be reversed absent a clear abuse of discretion. *People v. Phillips,* 885 P.2d 359 (Colo.App.1994).

Section 18–1–105(6), C.R.S.1999, requires a court, when sentencing a defendant to incarceration, to impose a sentence within the specified presumptive range for the offense at issue. When the trial court imposes a sentence outside the presumptive range, § 18–1–105(7), C.R.S.1999, requires the trial court, in all cases except those enumerated in § 18–1–105(9), C.R.S.1999, to make specific findings on the record detailing the extraordinary circumstances which constitute the reasons for varying from the presumptive range.

Before 1990, the sentence-enhancing provisions now enumerated in § 18–1–105(9.5), C.R.S.1999, were encompassed in § 18–1–105(9) as extraordinary circumstances requiring aggravated sentences, and for which specific findings were not required. *See* Colo. Sess. Laws 1990, ch. 120, § 18–1–105 at 955; *People v. Saucerman,* 926 P.2d 130 (Colo. App.1996). However, when the General Assembly amended § 18–1–105(9) and enacted § 18–1–105(9.5), it did not amend § 18–1–105(7) to provide that a trial court need not make specific findings regarding deviation from the presumptive range when imposing a sentence under § 18–1–105(9.5).

Here, the presumptive range for sentencing was two to six years in the Department of Corrections. Nevertheless, under § 18–1–105(9.5)(a), C.R.S.1999, defendant could be subject to a sentence of at least two years, and up to twelve years—twice the presumptive range—because when he was arrested for the possession charge, he was on bond for a previous felony for which he was later convicted. However, the trial court did not make specific findings that would justify varying from the presumptive range.

The People concede that the trial court did not make specific findings, but nevertheless argue that, because this was defendant's fifth felony conviction, the presumptive range was automatically increased, and thus, the record supported the sentence. We disagree.

The plain language of § 18–1–105(7), as well as case law interpreting § 18–1–105(9.5), leads us to conclude that § 18–1–105(7) is unambiguous and does not provide an exception for a trial court's obligation to make specific findings when the sentence-enhancing factors contained in § 18–1–105(9.5) are present. *See Board of County Commissioners v. Bainbridge, Inc.*, 929 P.2d 691 (Colo. 1996) (statute must be interpreted as written). If the General Assembly had intended not to require findings, it would have done so specifically. Thus, the trial court erred in not making specific findings to support its reasons for deviating from the presumptive range. *See People v. Saucerman, supra* (affirming trial court's sentence outside the presumptive range because aggravating factors under § 18–1–105(9.5) applied and trial court properly justified its reasons for deviating from the presumptive range); *People v. Phillips, supra* (same).

Accordingly, the judgment of conviction is affirmed and the cause is remanded to the trial court to re-sentence defendant. On remand, the trial court may sentence defendant within the presumptive range or may choose again to impose the same sentence. In the latter event, it must make specific findings justifying a sentence in excess of the presumptive range.

Judge PLANK and Judge NIETO concur.